Thank you. Your Honors, may it please the Court, William Lane of Kirkland & Ellis for Petitioner Lester Marroquin. I'd like to reserve two minutes for rebuttal. This Court should grant Mr. Marroquin's petition for relief because the immigration judge made two distinct legal errors. First, the immigration judge's competency inquiry was deficient under Franco Gonzalez, as well as other precedent, including this Court's recent decision in Calderon-Rodriguez. Second, in rejecting Mr. Marroquin's CAT claim, the immigration court failed to consider the evidence before in violation of agency regulation and this Court's precedent. Either of these legal errors justifies relief. I address each in turn, as well as the government's waiver arguments. Regarding competency, the government acknowledges that Mr. Marroquin suffers from schizoaffective disorder, which is a serious mental condition. For good reason, individuals with schizoaffective disorder are class members under Franco Gonzalez. And as class members, there is no presumption of competency for these individuals, unlike the general population. Under Franco, these individuals must be given a qualified representative unless the IJ determines, quote, there is no reasonable cause to believe, unquote, that these individuals' mental deficiency will impair their ability to proceed. Although the IJ purported to apply Franco, his perfunctory competency inquiry was legally deficient for several reasons. For one thing, the IJ failed to apply a crucial element of the Franco analysis. That's the determination whether the person's ability to present rational and coherent testimony, based upon adequate recall, was intact. Now, the record is filled with instances in which the IJ actually made findings that Mr. Marroquin's memory was not intact and he was not able to present rational and coherent testimony. But ultimately, they credited everything he said. They did, Your Honor. But the problem is — Go ahead. So they credited what he said, and that means under this Court's case law, they believe that it's true, the immigration judge. The problem is what testimony may not have come out. Now, when Mr. Marroquin came forward, he was actually figuring out his memories as he was testifying. If you look throughout the record, there are various instances where either the immigration judge or the government even said, you know, this actually kind of sounds off. Are you sure this is what actually happened? Mr. Marroquin acknowledged, you know, I'm telling the truth here, but I understand I have passed hallucinations. I don't know. This may have not actually occurred. Now, these were all playing out in front of the immigration judge, which is not when it should have happened. Mr. Marroquin should have had an opportunity to sit down with someone, go through his memories and determine, okay, these were likely hallucinations. Don't testify about these. This is what probably happened. Do you think this is what happened? That actually played out in front of the immigration judge. That's where a qualified representative would have been crucial. So that's one point. It's the Franco element where he should have been able to present rational and coherent testimony based on adequate recall. Based on the immigration judge's findings, it does not appear the immigration judge realized that that was actually a component of Franco. His findings simply don't match with satisfying that element. So that's one point. Didn't the immigration judge find that he had completed his own application and the process he had gone through and everything he had done up to that point led the immigration judge to believe that he was competent? Yes, Your Honor. And those are elements of the Franco analysis, which is pretty in-depth. Now, I think it's pretty clear for the record the immigration judge was trying to apply Franco. There's no question he wasn't aware of Franco. He was making a fairly decent effort to try to apply it, but he did miss key elements. And Franco is a fairly intensive, has fairly intensive requirements. Now, again, the reason it does is it applies to a very small subset of the population, normally in three states. But Mr. Marroquin is actually, because of his disorder, is a member of the class, and it specifically applies to him. So he's the exception, and that's why the presumption is different than the normal population. So that's one thing. That's that element of Franco, the adequate recall. Another thing is just really the medical information that was available the immigration judge did not inquire about. Now, this Court had a recent decision earlier this year in Calderon-Rodriguez, which is cited in the government's brief, in which the immigration judge did not rely on updated medical records. Well, this was fairly updated, fairly current, as I recall. Well, Your Honor, in Calderon-Rodriguez, of course, it was roughly a year-old medical information the individual relied on. And they didn't realize it. I wrote that opinion. Correct. Yes, Your Honor. That's why I like citing it. But it wasn't quite this long in this case. It wasn't a year. But what we have here is we have the Dr. Lewis report, which was from November 2015. Now, at the time of the initial competency inquiry, that was December 2015. Correct, that's not that far later. But what actually happened was the final merits hearing was in March of 2016, several months later. But the judge continued to observe him, and by his own account, he was feeling okay at that point. I mean, he was very grateful for the medication, and he really had cleared his head, apparently. So, I mean, by all accounts, I mean, I think your other arguments are stronger. By all accounts, at this point, he was coping. The question is whether there's anything about his recollections that matter. Your Honor, it is correct. The Petitioner did say he was feeling better. But the IJ's questions in March were actually fairly perfunctory. It's just, are you feeling, are you improving? But he also watched what he did at the hearing. What's that, Your Honor? He also observed him at the hearing. He did observe him at the hearing, Your Honor. And that's, I mean, that's part of the concern. The findings were that his memory was impacted by this condition. And the point specifically with Calderon-Rodriguez, I think, in this case, Your Honor, is that the judge was aware there were medical records available. He specifically stated, you can see it. But once he credits everything, I mean, unless you think that — it seems to me, if anything, that favors him. I mean, you're believing all these things that some of them sound a little fantastic and may not be true, but you're believing them. Now, the question — I'd be interested in hearing your Catt argument, if you have one. Yes, Your Honor. Given the fact that we're assuming you're believing everything. Yes, Your Honor. So that does segue well into the Catt argument. The immigration judge here, I think, failed to consider a fair amount of evidence that was actually in the record. To your point, Judge Berzon, the immigration judge credited what Mr. Medekine stated. That means under this Court's precedent, he believed the facts that Mr. Medekine was testifying to. The problem is he didn't give reasoned consideration to those facts in rendering his Catt decision. So Mr. Medekine testified about a coordinated effort by both the police and the ZS to bring Mr. Medekine into the ZS. He talked about a false arrest in which the police specifically said, we're sending you to prison so you can meet my ZS friends. Mr. Medekine testified that he went to prison, he met those ZS friends, was beaten as a result of that because he refused to join. He was beaten several times in prison. And then upon release from prison, he ran into the police again. And when he informed them that he had not joined the ZS, he was beaten once again and told, if you come back here again, we see you again. You have not joined the ZS at that point. We're either going to kill you or send you back to prison. Now, to your point, Judge Berzon, the immigration judge credited all of that. So moving forward, we have to assume that all actually happened. And yet when it came time to the immigration judge's analysis, the immigration judge didn't even take these facts into consideration. For instance, the immigration judge stated Mr. Medekine had, quote, issues with the ZS in prison that they beat him up, but there was nothing described beyond that incident with the ZS, unquote. That's AR-85. That's simply not true. He described multiple instances with the ZS. And that's in the record. Those are the immigration judge's findings, which he disregarded. Sotomayor, didn't the immigration judge say something like getting killed isn't torture? Yes, sir. So I've got that right here. That's at AR-233 to 34. Mr. Medekine, I think when he realized the case was slipping away from him, said, you know, Your Honor, quote, if they see me, I'm not working with the ZS, they were going to kill me or send me back to jail. And the immigration judge's response was, understood, but that's not torture. Now, that's not the case law on what torture says. We have Cole v. Holder, for instance, Your Honor, that specifically describes beatings and killings. An extrajudicial execution is torture. If that's not torture, really, I mean, we're not left with much else. So, Your Honor, I mean, I think that's a misstatement of law as far as what constitutes torture. Again, the IJ credited that statement. So if that's true, that should have been considered torture. And that probably would be actually grounds for granting relief. Now, what we've asked for is, at a bare minimum, the immigration judge simply go back and consider the evidence before him. I think this Court would be well within its right to actually grant cash, but at a bare minimum, I think the immigration judge needs to consider the evidence. So your argument is not that because of Mr. Medekine's mental condition that there wasn't – that he lacked evidence to present to the Court or that he didn't have the opportunity to present additional evidence to the immigration judge. So your argument is not so much that as it is that there was all the evidence presented, but the immigration judge didn't consider that evidence. On the cat claims specifically, Your Honor, yes, that's the argument. Now, the competency argument runs into that because I think his arguments would have been better developed if he had a qualified representative. But I think he wins on the cat regardless of what the, you know, what the current record is. I think he wins on that. Counsel, Judge Gould, if I can interject, please. Yes, Your Honor. So if we decided to grant and remand, is the record open at that point for other evidence as to grant and remand crediting his testimony? Well, Your Honor, it would depend on the extent of your remand, obviously. If you agree that Mr. Medekine should have had a qualified representative, the record is fully open because at that point the testimony needs to be redeveloped. If you granted it more narrowly, I think there's enough in the record currently where the immigration judge could review and should find that Mr. Medekine qualifies under cat. But ideally what we're asking for is that Mr. Medekine also be able to give additional testimony. And I see that my time is up unless the Court has any other questions. Okay. Thank you. Are you representing Mr. Medekine on pro bono under our pro bono program? Yes, Your Honor. Thank you for doing that. Thank you, Your Honor. May it please the Court, my name is Margo Nisbet. I'm the plaintiff's attorney and I'm the plaintiff's attorney on behalf of the   I'm a plaintiff's attorney and I'm a plaintiff's attorney for the United States government. This case presents two distinct issues. The first is whether the record compels the reversal of the immigration judge's competency finding. And the second is whether the record compels the reversal of the immigration judge's denial of protection under the Convention against Torture. I will first address competency. The petitioner in this case has been diagnosed with schizoaffective disorder and is therefore a Franco class member. However, substantial evidence supports the immigration judge's finding that at the time of his hearings, he was being treated for this condition and was therefore able to meaningfully participate in his proceedings and was able to perform the additional functions of self-representation as outlined in Franco. At his December 18th hearing, the immigration judge confirmed that the petitioner had a rational and factual understanding of the nature and object of proceedings, understood his privilege to be represented by counsel, and understood that he had a right to submit and examine evidence, cross-examine witnesses, and appeal. In addition, throughout his proceedings, the petitioner demonstrated his ability to exercise these rights, to respond to allegations in the notice to appear, to respond to instructions from the immigration judge and the DHS, and to submit evidence in support of his claim. The petitioner claims that the immigration judge incorrectly applied that final requirement. Specifically, he states that the immigration judge incorrectly found that he was able to provide coherent testimony based on adequate recall. Nevertheless, the record undermines this claim. As outlined in the immigration judge's decision, the petitioner was able to provide coherent testimony regarding his multiple legal entries into the United States, his criminal history, including his 2005 robbery conviction, and his experiences in Guatemala. In addition, despite the petitioner's claim that he was unable to distinguish between memories and hallucinations, the petitioner, in fact, testified that although he used to believe that his mother was kidnapped, he now understood that his mind was playing tricks on him. Counsel, Judge Gould, if I could interject, please. I think you've got an excellent position on competency, but what I'm having trouble with on the case is the cat issue. So I hope you'll address it at some length. My question in my mind is if the IJ said we credit his testimony and the IJ said murder is not torture, then why shouldn't we make one grant and send it back on an open record? Well, I believe in that interaction, I believe what the immigration judge was saying was that the threat of death, the petitioner testified that while the police were beating him up, there was a death threat. And the immigration judge, I believe in that interaction, was saying that that was not torture, that the threat of death was not torture. As the immigration judge outlined in his decision, he referenced the few instances of harm that the petitioner testified to. For instance, the petitioner testified that the police arrested him, that he pleaded guilty to marijuana possession and was then put in jail and while in jail was beat up by the Zetas. Well, but wait a minute. What's left out of the IJ's account and the BIA's account was this whole connective he testified to, which we have to take as true, to the connection between the Zetas being after him and wanting to co-opt him and the fact that he wouldn't join them and the fact that the police were trying to enforce it and the fact that if he went back, they would. And that whole thread has been ignored. The petitioner testified that he, although he was beat up by the Zetas, that was his only interaction with the Zetas. And as the agency found, those instances of harm were an isolated event, that following that, he lived in Guatemala for a month and didn't have any continued threats. And so because none of those instances of harm constituted torture, the agency found that even if he faced future harm, he didn't establish that he faced future torture. Remember, the standard under CAT is that he has to show that he would more likely than not be tortured, which is defined as an extreme form of inhumane punishment. And so, although he may have... Or death. Or death, yes. So that although he showed that he might face harm, he failed to show that he would in fact be tortured, more likely than not be tortured. Okay. And also, there was no reference at all to the country conditions report. Well, as this Court has found in Lurita-Martinez, there is a presumption that the immigration judge considered all of the evidence in the record. And as this Court pointed out in Cole, a general statement that the immigration judge considered these as evidence is sufficient, absent of showing that the immigration judge in fact failed to consider that. Here, the judge did note in his decision that he considered the country reports on page 101 and 102 of the record. He referenced that he'd considered the reports and that to the extent that they showed general corruption in Guatemala. And they didn't... And he considered them in reference to his asylum and withholding claim. And so here, given that the country condition reports don't show, shed any additional light on the petitioner's claim for CAT, the immigration judge's consideration in his decision was sufficient under Cole. To go back to the Zetas, his testimony, as I understand it, was that he was approached by some police officers who said, you're going to meet somebody, my friends from the Zetas, you're going to start working with them. And then in jail, he met the Zetas, that is, the arresting officer he referred to, and then they asked him to work with him, but he refused. And then the Zetas tied him up and beat him. But there was this connection to the arresting officers, i.e., they brought him up to begin with, in plain view of the prison officials. And then he was in prison for three months, and then he was released, and then he went back and to prison again, and then some more officers came. And then they said that he had met any of his friends from the Zetas, and he said he was he hadn't, so they began beating him again and threatening to either send him back to jail or kill him if he did not join the Zetas. So the representation of this was a one-time situation just as wrong. Well, the immigration judge in his decision outlined all of those events. But then both he and the BIA said it was a one-time event. They referenced both the assault and both the additional instances of harm. But in discussing the cat playing, they said there was only one incident. They said both the agents... And it wasn't connected to the police, and it was directly connected to the police, and there were not just one incident, so they're just wrong. Well, they both did. The immigration judge and the board both referenced all of those events. And I believe in discussing them as an isolated incident, they were discussing those events, that sequence of events, as an isolated incident. It's noble of you. I mean, it's a good attempt. Anything else? If the Court has no further questions, in conclusion, the record does not compel the reversal of the immigration judge's competency finding or the agency's denial of protection under the Convention Against Torture. And so we respectfully request that the Petitioner's petition for review is denied. Thank you. Thank you. Thank you very much. Your Honor, I see that my time has expired. I would just like to say I think Mr. Marroquin deserves that the case be remanded. All the evidence should be considered on his CAT claim, and it's clear based on the IJ's decision that the evidence was not. Pending any further questions, Your Honor, I ask. Okay. Thank you very much. Thank you both for your helpful arguments. The case of Marroquin v. Whitaker is submitted, and we will be in recess for 10 minutes.
judges: Gould, Berzon, Marquez